UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-----------------------------------------------------------X

JEREMY BIGWOOD,
3200 16th St. NW #806
Washington, D.C. 20010,

               Plaintiff

v.

UNITED STATES DEPARTMENT OF DEFENSE,
The Pentagon, Washington D.C. 20301-1000;
THE CENTRAL INTELLIGENCE AGENCY,
Washington D.C. 20505,

               Defendants

-----------------------------------------------------------X

**FILED**
MAR 2 3 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Case: 1:11-cv-00602
Assigned To : Roberts, Richard W.
Assign. Date : 3/23/2011
Description: FOIA/Privacy Act

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., for declaratory, injunctive and other appropriate relief to compel the release of agency records improperly withheld from plaintiff, Jeremy Bigwood, by defendants, United States Department of Defense ("DOD") and the Central Intelligence Agency ("CIA") (collectively "Defendants").

2. Plaintiff seeks the release of records on a matter of significant public concern: documents related to the 2009 coup d'état in Honduras.

3. In the early hours of June 28, 2009, the Honduran military kidnapped incumbent president Manual Zelaya Rosales from his home, drove him to an airport and, against his will, put him on a plane to Costa Rica under military guard.

4. Prior to arriving in Costa Rica, President Zelaya's plane stopped to refuel at Soto Cano, a Honduran air base where 600 U.S. troops are stationed under the command of Joint Task Force Bravo ("JTF-B").[1] U.S. forces share the control tower of the airport with the Honduran Armed Forces and would likely have registered the arrival and departure of this plane containing the deposed president.

5. Although the physical kidnapping of President Zelaya was carried out by Honduran military, the coup was planned and carried out by key leaders in the Honduran Congress, Supreme Court and military, in association with elite business leaders. Certain business associations supported the coup and helped solidify the subsequent regime through lobbying efforts in the United States.[2]

6. The coup d'état, combined with its accompanying rupture in democracy, is one of the most significant recent political events in the region. Since the coup d'état, the repression of human rights defenders, activists, journalists, unionists and teachers has been severe.

7. International condemnation of the coup d'état was near-unanimous. The Organization of American States suspended Honduras' membership and many Latin American and European countries withdrew their ambassadors from Honduras.

8. The United States Government's response to President Zelaya's kidnapping was less clear. The then-new Obama Government initially condemned the President's removal but was

---

[1] *See* Joint Task Force-Bravo FAQ, http://www.jtfb.SOUTHCOM.mil/questions/topic.asp?id=1126 (last visited Mar. 21, 2011).

[2] *E.g.,* Kevin Bogardus, *Honduran Government Hires PR Shop*, THE HILL, Sept. 27, 2009, *available at* http://thehill.com/business-a-lobbying/60471-honduran-government-hires-pr-shop; Elizabeth Dickinson, *Who's Lobbying for the Coup?*, FOREIGN POLICY, Aug. 4, 2009, *available at* http://www.foreignpolicy.com/articles/2009/08/04/whos_lobbying_for_the_coup?page=0,2.

among the first to reestablish normal relations. The question of normalizing relations with Honduras is still a contentious issue in the region, with the Organization of American States and many other Latin American countries refusing to do so.

9. Prior to the coup d'état and continuing to the present, the United States has maintained an extremely close relationship with Honduras. The United States is Honduras' largest trading partner and its primary supplier of humanitarian aid. According to the Department of State's website,[3] the two countries conduct joint peacekeeping, counternarcotics, humanitarian and disaster relief, and civic action exercises. U.S. troops conduct and provide logistics support for a variety of bilateral and multilateral exercises--medical, engineering, peacekeeping, counternarcotics, and disaster relief.

10. This close bilateral relationship extends to the U.S. training of Honduran military and security forces. Beginning in the Cold War and continuing to the present, the United States has helped train Honduran military and police through the School of the Americas, now known as the Western Hemisphere Institute for Security Cooperation, among other military institutions. Honduran Army General Romeo Vásquez Velásquez, one of the primary perpetrators of the coup d'état, trained on at least two occasions at the School of the Americas.

11. In light of the close relationship between the United States and Honduras, it is probable that little goes on in Honduras without the knowledge of, and/or consultation with, the U.S.

---

[3] Department of State Background Notes: Honduras, http://www.state.gov/r/pa/ei/bgn/1922.htm (last visited Mar. 21, 2011).

Government. In fact, the *Wall Street Journal* reported that the U.S. Government knew about the coup d'état as early as several weeks before it occurred.[4]

12. Despite public information regarding the U.S. Government's knowledge of the coup and its perpetrators, before and during the actual commission of the act, Defendants refuse to release and continue to unlawfully withhold documents responsive to Plaintiff's requests.

13. There is a compelling public interest in disclosure of the requested documents concerning U.S. knowledge of and participation in the 2009 coup d'état in Honduras. Plaintiff seeks information necessary to facilitate meaningful public discourse about what occurred in Honduras and if and how U.S. agencies, officials, and/or interests affected the events. To vindicate the public's right to information regarding this event, Plaintiff seeks declaratory, injunctive and other appropriate relief to compel Defendants to immediately process Plaintiff's requests and release records that are and have been unlawfully held.

## JURISDICTION AND VENUE

14. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

15. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 USC §§ 1391(e) and 1402(a).

---

[4] *See* Paul Kiernan et al., *Coup Rocks Honduras*, WALL ST. J., June 29, 2009, *available at* http://online.wsj.com/article/SB124619401378065339.html.

## PARTIES

16. Plaintiff Jeremy Bigwood ("Plaintiff") is a freelance investigative journalist and resides in the District of Columbia. He has written for the *American Journalism Review*, the *Village Voice* and many other publications. His photographic journalism has appeared in *Time*, *Newsweek*, *U.S. News & World Report*, *Der Spiegel*, *Der Stern*, the *San Francisco Chronicle*, *San Francisco Examiner*, *Los Angeles Times*, *Washington Post*, and the *Boston Globe* among others.

17. Defendant DOD is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). United States Southern Command ("SOUTHCOM") is a subcomponent of DOD.

18. Defendant CIA is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### I. SOUTHCOM

**a. SOUTHCOM Possesses Records Concerning the Coup against Honduran President Zelaya.**

19. SOUTHCOM is a joint command comprised of representatives from the Army, Navy, Air Force, Marine Corps, Coast Guard, and several other federal agencies. SOUTHCOM is responsible for providing contingency planning, operations, and security cooperation for Central and South America, including Honduras.

20. Given the breadth of SOUTHCOM's responsibilities in Honduras, it is probable that SOUTHCOM had prior knowledge of the impending coup d'état.

21. In particular, SOUTHCOM has worked closely with Chief of Staff of the Honduran Armed Forces General Romeo Vásquez Velásquez, a key actor and perpetrator of the coup, who has been a member of the Honduran military since 1972.[5] General Vásquez's role in the coup has been criticized by U.S. officials and documented in the media.[6] Other members of the Honduran military have openly acknowledged the illegality of the military's removal of Zelaya.[7]

22. Since 1995, SOUTHCOM's JTF-B has controlled U.S. military operations and assistance at Soto Cano airbase in Honduras, where the plane kidnapping President Zelaya stopped during his removal from the country.

### b. Plaintiff Submitted a FOIA Request to SOUTHCOM Regarding the Coup against Honduras

23. On July 1, 2009, Plaintiff transmitted, via United States Postal Service ("USPS"), a written FOIA request to SOUTHCOM for agency records. Plaintiff requested all records relating to "the coup against Honduras' President Manuel Zelaya" including, but not limited to:

   a. "any observations or reports about the activities of the Honduran Armed Forces with respect to the coup – as well as the coup itself";

   b. "any records of the passage of the kidnapped president through any military bases, such as Soto Cano – which has a significant US presence";

---

[5] Donna Miles, *Stavridis Praises U.S.-Honduran Cooperation in Confronting Mutual Threats*, American Forces Press Service, http://www.southcom.mil/AppsSC/news.php?storyId=1540 (last visited Mar. 21, 2011); Sonny Cohrs, *U.S. Forces Help Hondurans Complete Final Hurdle*, http://www.army.mil/-news/2007/12/11/6532-us-forces-help-hondurans-complete-final-hurdle/ (last visited Mar. 21, 2011).

[6] *E.g., Llorens Wanted Velasquez Out*, Honduras News, Jan. 29, 2011, http://www.hondurasnews.com/wikileaks-cable-re-honduras-2-162010/ (last visited Mar. 21, 2011); Marc Lacey, *6 Cited in Honduran Leader's Ouster*, NEW YORK TIMES, Jan. 7, 2010, *available at* http://www.nytimes.com/2010/01/08/world/americas/08honduras.html?scp=1&sq=honduras%20romeo%20vasquez%20velazquez&st=cse.

[7] Francis Robles, *Don't Try to Return, Zelaya Warned*, MIAMI HERALD, July 4, 2009.

 c. any reports about the "coup d'état before it actually took place"; and

 d. "inter-agency communications to and from USSOUTHCOM, as US officers in Honduras may have been informing other US government entities about the coup."

24. Plaintiff asked that his request receive expedited processing on the basis that the requested information "concerns a matter of current exigency to the American public" since it related to actual or alleged federal government activity and was made by a person primarily engaged in disseminating information in order to inform the public. Plaintiff based his request on the public's interest in the Honduran coup as it represents a historic change in the U.S. Government's relationship in Latin America.

25. Plaintiff also requested a waiver of costs accumulated during the actual search and review process, based on his status as a "representative of the news media."

### c. Defendant SOUTHCOM Failed to Make a Determination Regarding Plaintiff's FOIA Request

26. Plaintiff received no response from SOUTHCOM to his initial request for documents.

27. Plaintiff made telephone calls to SOUTHCOM, on November 4, 5, 8, 9, 10, and 15, 2010, in repeated attempts to follow up on his initial request for documents. On each occasion, Plaintiff left a recorded message.

28. On November 5, 2010, Plaintiff transmitted to SOUTHCOM, via USPS, a written inquiry as to the status of his request.

29. On November 12, 2010, Plaintiff made a second written inquiry, via USPS certified mail, as to the status of his request. The Domestic Return Receipt was signed by "A. Brookes" and dated November 16, 2010.

30. On November 24, 2010, Plaintiff made an inquiry, via telephone, to SOUTHCOM regarding the status of his request. Plaintiff spoke with Captain Villalobos, who stated that SOUTHCOM had received Plaintiff's original FOIA request and granted expedited processing of same.

31. In a letter dated November 26, 2010, Plaintiff memorialized the November 24 telephone conversation, including the grant of expedited processing, in a letter to SOUTHCOM, transmitted via USPS certified mail and accepted by SOUTHCOM's offices on November 30, 2010.

32. On November 29, 2010, well over one year after Plaintiff's initial request, SOUTHCOM provided Plaintiff with a letter termed "interim response." In this letter, SOUTHCOM confirmed receipt of Plaintiff's original request of July 2009 and the grant of Plaintiff's request for expedition via telephone on November 24. Additionally, SOUTHCOM granted Plaintiff a fee waiver for up to 100 pages of reproduction.

33. SOUTHCOM did not inform Plaintiff of his right to appeal in its November 29 correspondence.

### d. Plaintiff Filed an Administrative Appeal with SOUTHCOM

34. Despite SOUTHCOM's grant of expedited processing, Plaintiff received no response to his request, nor any communications from SOUTHCOM describing any reason for delay.

35. On December 30, 2010, Plaintiff sent a letter, via USPS certified mail, to SOUTHCOM inquiring as to the status of his expedited request.

36. Plaintiff received no response to his December 30 communication.

37. On February 7, 2011, over twenty working days after SOUTHCOM acknowledged Plaintiff's FOIA request, and well over a year after it received his original request, Plaintiff transmitted, via USPS certified mail, a written administrative appeal to SOUTHCOM. The letter of appeal was accepted by SOUTHCOM's offices on February 10, 2011.

38. Plaintiff's administrative appeal requested review of SOUTHCOM's failure to make a determination regarding his FOIA request.

### e. SOUTHCOM Failed to Respond to Plaintiff's Administrative Appeal

39. Through the date of this pleading, which is filed more than twenty working days after SOUTHCOM received Plaintiff's administrative appeal, SOUTHCOM has not responded to Plaintiff's administrative appeal.

### f. Plaintiff has Exhausted Administrative Remedies with SOUTHCOM

40. Through the date of this pleading, SOUTHCOM has failed to produce any documents in response to Plaintiff's FOIA request.

41. Through the date of this pleading, SOUTHCOM has failed to state which documents, if any, it intends to produce in response to Plaintiff's FOIA request.

42. Through the date of this pleading, SOUTHCOM has failed to expedite Plaintiff's FOIA request, despite having granted his request to do so.

### g. Plaintiff Submitted a FOIA Request to SOUTHCOM Regarding Honduran Armed Forces General Romeo Vásquez Velásquez

43. On July 8, 2009, Plaintiff transmitted, via USPS, a written FOIA request to SOUTHCOM for agency records. Plaintiff requested all records, from May 1, 1979, relating to Honduran Army General Romeo Vásquez Velásquez, including, but not limited to, any biographical sketches of him.

44. Plaintiff asked that his request receive expedited processing on the basis that the requested information "concerns a matter of current exigency to the American public" related to actual or alleged federal government activity and was made by a person primarily engaged in disseminating information in order to inform the public. Plaintiff based his request on the public's interest in the Honduran coup as it represents a historic change in the U.S. Government's relationship in Latin America.

45. Plaintiff also requested a waiver of costs accumulated during the actual search and review process, based on his status as a "representative of the news media."

### h. Defendant SOUTHCOM Failed to Make a Determination Regarding Plaintiff's FOIA Request

46. Plaintiff made telephone calls to SOUTHCOM on November 4, 5, 8, 9, 10, and 15, 2010, in repeated attempts to follow up on his initial request for documents. On each occasion, Plaintiff left a recorded message.

47. On November 24, 2010, Plaintiff made an inquiry, via telephone, to SOUTHCOM regarding the status of his request. On this occasion, Plaintiff spoke with Captain Villalobos, who stated that SOUTHCOM had received Plaintiff's original FOIA request and granted expedited processing of same.

48. In a letter dated November 26, 2010, Plaintiff memorialized the November 24 telephone conversation, including the grant of expedited processing, in a letter to SOUTHCOM, transmitted via USPS certified mail and accepted by SOUTHCOM's offices on November 30, 2010.

49. On December 16, 2010, well over one year after Plaintiff's initial request, SOUTHCOM provided Plaintiff with a letter termed "interim response." In this letter, SOUTHCOM confirmed receipt of Plaintiff's original request of July 2009 and granted a fee waiver for up to 100 pages of reproduction but did not address his request for expedition. In this letter, SOUTHCOM did not inform Plaintiff of his right to appeal.

50. On December 30, 2010, Plaintiff sent a letter, via USPS certified mail, to SOUTHCOM inquiring as to the status of his request to expedite. The letter was accepted by SOUTHCOM's offices on January 3, 2011.

i. **Plaintiff Filed an Administrative Appeal with SOUTHCOM**

51. Plaintiff received no response to his request, nor any communications from SOUTHCOM describing any reason for delay.

52. On February 7, 2011, over twenty working days after SOUTHCOM acknowledged Plaintiff's FOIA request, and well over a year after it received the original request, Plaintiff transmitted, via USPS certified mail, a written administrative appeal to SOUTHCOM. The letter of appeal was accepted by SOUTHCOM's offices on February 10, 2011.

53. Plaintiff's administrative appeal appealed SOUTHCOM's failure to make a determination regarding his FOIA request and failure to respond to the request for expedition thereof.

### j. SOUTHCOM Failed to Respond to Plaintiff's Administrative Appeal

54. Through the date of this pleading, which is filed more than twenty working days after SOUTHCOM received Plaintiff's administrative appeal, SOUTHCOM has not responded to Plaintiff's administrative appeal.

### k. Plaintiff has Exhausted Administrative Remedies with SOUTHCOM

55. Through the date of this pleading, SOUTHCOM has failed to produce any documents in response to Plaintiff's FOIA request.

56. Through the date of this pleading, SOUTHCOM has failed to state which documents, if any, it intends to produce in response to Plaintiff's FOIA request.

## II. CIA

### a. The CIA Possesses Records Concerning the Participation of Honduran Business Interests in the Coup against Honduran President Zelaya.

57. The CIA has been documented to have been deeply involved in events in Honduras in the past. One clear example is its training of Battalion 316, a military intelligence unit documented as having committed politically-motivated murder, torture and disappearances in the 1980s.[8]

---

[8] Ginger Thompson and Gary Cohn, *Torturer's Confessions: Now in Exile, These CIA-trained Hondurans Describe Their Lives – and the Deaths of Their Victims*, THE BALTIMORE SUN, June 13, 1995, *available at* http://www.baltimoresun.com/news/maryland/bal-negroponte2,0,961357.story?page=1.

58. Commentators have noted the role that the business elite in Honduras played in the political repression of the 1980s.[9] Business interests and associations have also been key in garnering support for the recent coup d'état, both in terms of helping to build campaigns against Zelaya before the coup and in building support for the coup subsequently.

59. Over the past several years, the Consejo Hondureño de la Empresa Privada ("COHEP", in English, the "Honduran Council of Private Enterprise") has been identified by the CIA as being among the handful of "powerful political pressure groups and leaders" in Honduras.[10]

60. COHEP and much of its leadership supported the 2009 military coup and the subsequent de facto government of Roberto Micheletti, who assumed power after the forced exile of President Zelaya.[11]

61. The CIA had reason to be aware of, and in fact was sent communications reflecting, COHEP's opposition to President Zelaya prior to the coup.[12]

### b. Plaintiff Submitted a FOIA Request to the CIA Regarding the Honduran National Business Council (aka COHEP)

62. On December 2, 2010 Plaintiff transmitted, via USPS, a written FOIA request to the CIA for agency records. Plaintiff requested all records regarding COHEP. In particular, Plaintiff requested records relating to any and all meetings between CIA officers, assets or agents and

---

[9] *E.g.*, Robert Lovato, *Our Man in Honduras: The Backers of the Coup in Honduras Have an Inside Man in Washington*, THE AMERICAN PROSPECT, July 22, 2009, *available at* http://prospect.org/cs/articles?article=our_man_in_honduras.
[10] *E.g.*, CIA, *The World Factbook (2011)*, *available at* https://www.cia.gov/library/publications/the-world-factbook/geos/ho.html.
[11] *E.g.*, COHEP, Press Release (dated June 29, 2009) https://cohep.com/pdf/Press%20Release%20June%20the%2029th%202009.pdf
[12] WikiLeaks: Micheletti Made Pact With Zelaya on ALBA, http://www.hondurasweekly.com/international/3552-wikileaks-micheletti-made-pact-with-zelaya-on-alba (last visited Mar. 22, 2011).

13

COHEP. Plaintiff requested that the agency search its records from January 1, 2009 through the time it initiated processing of the request.

63. Plaintiff also requested a waiver of costs accumulated during the actual search and review process, based on his status as a "representative of the news media."

### c. The CIA Refused to Respond to Plaintiff's Request

64. In a letter sent on December 22, 2010, the CIA refused to substantively respond to Plaintiff's request by stating that it could neither "confirm nor deny" the existence of the responsive records.

### d. Plaintiff Filed an Administrative Appeal with Defendant CIA

65. On December 27, 2010, Plaintiff transmitted, via USPS, a written administrative appeal to the CIA of its December 22 response.

### e. Defendant CIA Denied Plaintiff's Administrative Appeal

66. In a letter dated March 7, 2011, Defendant stated that it had considered Plaintiff's appeal and reiterated its previous response, refusing to confirm or deny the existence of any responsive records. Defendant further stated that Plaintiff could deem the response "to be a denial of your request on the basis of FOIA exemptions (b)(1) and (b)(3)."

67. Due to Defendant's continued refusal to confirm or deny the existence of responsive records, Plaintiff has no recourse but to file suit. He has exhausted his administrative remedies.

## CAUSES OF ACTION

### First Claim for Relief: Defendants DOD & CIA Violated FOIA by Failing to Disclose and Release Records Responsive to Plaintiff's Requests

68. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if set forth herein.

69. Defendants DOD and CIA have violated the public's right to agency records by failing to disclose and release the requested records, under 5 U.S.C. § 552.

### Second Claim for Relief: Defendant DOD Violated FOIA by Failing to Expedite Processing of Plaintiff's FOIA Requests After Having Granted Expedition

70. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if set forth herein.

71. Defendant DOD, through SOUTHCOM's failure to expedite the processing of Plaintiff's requests after having granted the request to do so, violated the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants to immediately make a full, adequate, and expedited search for the requested records;

(2) Enjoin Defendants from assessing fees or costs for the processing of the FOIA Requests;

(3) Order Defendants, upon completion of expedited processing, to disclose the requested records in their entirety and make copies available to Plaintiffs no later than ten days after the Court's order;

(4) Award Plaintiff costs and reasonable attorney's fees incurred through this action as provided by 5 U.S.C. § 552(a)(4)(E); and

(5) Grant such other and further relief as this Court may deem just and proper.

Dated: March 23, 2011

Respectfully submitted,

_____
Zachary Wolfe (D.C. Bar No. 463548)
The George Washington University
801 22nd Street, NW, Rome Hall 557
Washington, DC 20052
(202) 994-3053

and

Anjana Samant* (*pending admission pro hac vice*)
Pamela Spees**(*pending admission pro hac vice*)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6445 - Phone
212-614-6499 – Fax

*Counsel for Plaintiff*

---

\* *Admitted only in State of New York; Eastern District of New York; Southern District of New York; United States Court of Appeals for the First Circuit; United States Court of Appeals for the Armed Forces.*

\*\* *Admitted only in State of New York; State of Louisiana; Western District of Louisiana.*